AMERICAN PUBLIC POWER
ASSOCIATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Boston Edison Company, Intervenor.

CITIES OF ANAHEIM, Alameda, Lodi,
et al., Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent,

Boston Edison Company, Intervenor.

Nos. 73–1992, 73–2162.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 13, 1975.

Decided Nov. 3, 1975.

Sandra J. Strebel, Washington, D. C., with whom Frances E. Francis, Washington, D. C., was on the brief for petitioners. Peter K. Matt, Washington, D. C., also entered an appearance for petitioners.

M. Frazier King, Atty. F. P. C. of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of court, with whom Leo E. Forquer, Gen. Counsel, George W. McHenry, Jr., Sol., and John H. Burns, Atty., F. P. C., were on the brief for respondent. A. Lee Wallace, III, Atty., F. P. C., also entered an appearance for respondent in No. 73–2162.

George F. Bruder, Washington, D. C., with whom Leonard W. Belter, Washington, D. C., was on the brief for intervenor.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and RICHEY,* United States District Judge for the District Court of the District of Columbia.

Opinion for the Court filed by District Judge CHARLES R. RICHEY.

CHARLES R. RICHEY, District Judge:

This case is before the Court for a review of two Federal Power Commission orders issued in Docket No. R–463: Order No. 487, entitled "Order Amending Section 35.13 of the Regulations Under the Federal Power Act", reported at 50 FPC 125 (1973); and Order entitled "Order Denying Application for Rehearing", issued on September 14, 1973 (unreported). These orders amended the regulations under the Federal Power Act to provide for filing of wholesale electric power rates by public utilities based on estimates of future costs as well as past actual costs, rather than upon past actual costs alone, as was previously required by the regulations.

Petitioner in 73–1992 is the American Public Power Association, a national organization of local, publicly-owned electric utilities which represents more than 1400 publicly-owned systems. A large number of these systems purchase all or part of their power requirements from investor-owned electric utilities subject to FPC jurisdiction. Petitioners in 73–2162 are all wholesale-for-resale customers or associations of customers of investor-owned utilities subject to the rate regulatory jurisdiction of the FPC. The rates, under which the power purchases by these APPA members and the consumer-owned systems are made, can be changed by their wholesale suppliers only in accordance with Section 35.13 of the Commission's regulations under the Act. The Commission's orders changing that regulation are the subject of this appeal.

On December 14, 1972, the Commission issued a notice of a proposed rulemaking entitled "Filing of Electric Service Tariff Changes." [1] The Commission proposed amending portions of its requirements for Filing of Rate Schedules, 18 C.F.R., Chapter 1, Subchapter B, Part 35, to require the filing of data for an additional 12-month test period beginning three months after the latest twelve month period for which there was data available. In explaining the previous filing requirement and how the proposed rulemaking would change it, the Commission stated that the present regulation

"requires a cost of service for a test period of twelve consecutive months of available actual experience and provides for the submittal of information regarding any significant changes in facilities, operations or costs which will become effective within eight months

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Published in the Federal Register on December 12, 1972, 37 Fed.Reg. 28192.

of the last month of available actual experience.

"We are now proposing that the public utility file an unadjusted cost of service for the most recent twelve consecutive months for which actual data are available (Period I). In addition the public utility would be required to file estimated cost of service data for the twelve month period beginning three months after the end of the twelve months of actual data (Period II)."

The purpose of the rule requiring additional information to accompany a rate filing was to

"enable the Commission to consider data more suitable for the determination of rates for future use than under present methods. In addition it will minimize adjustments or annualizations of book or estimated book data."

As authority for its proposal, the Commission cited Section 309 of the Federal Power Act, 16 U.S.C. § 825h, and Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553.

In order to effect this change, the Commission proposed to delete 18 C.F.R. § 35.13(b)(4), parts (iii) and (iv) and substitute a new part (iii). Parts (iii) and (iv) of 18 C.F.R. § 35.13(b)(4) provided in pertinent part:

"(iii) The statement of the cost of service should contain an analysis of system costs for a test period of twelve consecutive months including return, taxes, depreciation, and operating expenses, and an allocation of such costs to the services rendered. The information submitted with the statement shall show the data itemized below for the test period, together with any significant changes in facilities, operations, or costs experienced during that period, or which are known and are measurable with reasonable accuracy at the time of the filing, and which will become effective within

eight months of the last month of available actual experience. . . .

"(iv) The statement of cost of service shall include an attestation by the chief accounting officer or other authorized accounting representative of the filing public utility that the cost statements and supporting data submitted as a part of the filing which purport to reflect the books of the public utility do, in fact, set forth the results shown by such books. Following is a description of statements A through O required to be filed pursuant to this subparagraph." [2]

The proposed regulation was as follows:

"The statement of the cost of service should contain unadjusted system costs for the most recent twelve consecutive months for which actual data are available (Period I) including return, taxes, depreciation, and operating expenses, and an allocation of such costs to the service rendered. The statement of cost of service shall include an attestation by the chief accounting officer or other accounting representative of the filing public utility that the cost statements and supporting data submitted as a part of the filing which purport to reflect the books of the public utility do, in fact, set forth the results shown by such books. Following is a description of Statements A through O required to be filed pursuant to this subparagraph. In addition, the public utility shall file statements A through O based on estimates for the twelve consecutive months beginning three months after the end of Period I (Period II). Full explanation of the bases of each of the estimated figures shall be included. Period II shall be the 'test period.' "

The Commission invited comments on the proposed rulemaking from all inter-

---

**2.** Statements A through O require such information as balance sheets, income statements, cost of plant, accumulated depreciation and depreciation expense, cost of debt, preferred stock and common stock capital, operating expenses, taxes, overall cost of service, allocated cost of service and comparison of cost of service under old and new rates.

ested parties, and stated that it would consider all such written submissions before it would take action on the proposed regulation. On May 22, 1973, the Commission issued a "Notice of Rulemaking Conference" which set June 5, 1973, as a date for any interested party to make comments or suggestions on the record. At the conference, parties supporting and opposing the proposed rule were present and made comments.

On July 17, 1973, the Commission issued Order No. 487 adopting its proposed regulation with minor changes. The Commission again noted its expectation "that this proposed information would enable the Commission to consider data more suitable for the determination of rates for future use than under present methods." In regard to its proposed changes, the Commission observed that it had received comments from eighty-seven respondents consisting of public utility companies, several senators and congressmen, cooperatives, municipal systems, investor-owned utilities, state associations, trade associations, five law firms representing utilities and two individuals. It stated that generally, the cities, cooperatives, and associations of cities or cooperatives expressed opposition to this proposed rulemaking, and that each of the companies filing expressed overall approval of the rulemaking.

Petitioners herein argue that the new regulations are in effect a de-regulation of wholesale power rates which is in violation of the FPC's duties established by the Federal Power Act. That is, petitioners say that rates based upon estimates of future costs are too speculative to be "just and reasonable"; and that the establishment of such rates would be based upon estimates made by the utilities and could therefore be manipulated by them to their financial advantage. Implicit in this argument is the contention that Congress had a historical cost basis uppermost in its mind in enacting the rate provisions of the Federal Power Act.

Secondly, petitioners contend that the FPC has not provided a sufficient "reasoned analysis" of their order for purposes of judicial review. This is a requirement of the Administrative Procedure Act. Thirdly, petitioners claim that the Commission failed to consider the antitrust implications of the new regulation. Finally, the petitioners say that the Commission's rejection of their alternative proposal (that there would be a provision for automatic refunds to the customers of the utilities when the estimated costs proved to be too high) was arbitrary and capricious.

### Discussion

■ *Order No. 487 was promulgated in accordance with the Administrative Procedure Act, is not arbitrary or capricious, and is, therefore, a reasonable exercise of the Commission's rulemaking authority under the Federal Power Act.*

■ The statutory authority empowering the Commission to prescribe rules for the performance of its duties under the Federal Power Act is found in Section 309, 16 U.S.C. § 825h, which states in pertinent part:

"The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend and rescind such orders, rules and regulations as it may find necessary or appropriate to carry out the provisions of this Act."

Section 309 of the Act contains no requirements as to the procedure to be followed by the Commission in rulemaking. Therefore, the Commission must follow the informal rulemaking procedures set out in Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, which requires that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."

■ As this Court held in *Automotive Parts and Accessories Ass'n v. Boyd,* 132 U.S.App.D.C. 200, 407 F.2d 330, 343 (1968), when reviewing the promulgation of a rule which is the product of an informal rulemaking procedure:

"Our function is to see only that the result is reasonable and within the range of authority conveyed, that it has been formulated in the manner prescribed, and that the disappointed have had the opportunity provided by Congress to make their views prevail."

A court, therefore, will defer to the agency's judgment if the rule satisfies this criteria of reasonableness.

■ In judging the reasonableness of the regulations we note that rulemaking by the Commission is presumptively valid. *New York Foreign Freight F & B Association v. Federal Maritime Commission,* 337 F.2d 289 (2nd Cir. 1964), *cert. denied,* 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965). Petitioners bear "the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences." *Permian Basin Area Rate Cases,* 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312 (1968), quoting from *FPC v. Hope Natural Gas Company,* 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1944).

In promulgating Order No. 487, the Commission has fully complied with the requirements of the APA and relevant precedent: Order No. 487 contains a concise general statement of its basis and purpose and the rule is a reasonable means to enable the Commission to better determine the justness and reasonableness of rates under the Federal Power Act.

■ Petitioner's primary claim, plainly stated, is that the phrase "just and reasonable" rates actually means rates set solely on the basis of historic test period costs. However, Congress carefully eschewed tying "just and reasonable" rates to any particular method of deriving the rates. Certainly there is nothing in the Federal Power Act specifically endorsing historic test year ratemaking or any other technique of ratemaking. Congress clearly intended to allow the Commission broad discretion in regard to the methodology of testing the reasonableness of rates. There was recognition that differing circumstances might call for different analytical approaches. Thus, while historical test year ratemaking may have produced "just and reasonable" results in times of relative price stability, it may not produce such rates under rapid inflation. The Congress did not bind the Commission to any particular ratemaking formula; it carefully left the Commission free, within the broad ambit of the statutory rubric, to cope with events.

■ The Supreme Court has specifically acknowledged that the "just and reasonable" standard was not intended to imply any particular methodology of ratemaking:

"Under the statutory standard of 'just and reasonable' it is the result reached, not the method employed which is controlling." *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944).

In approving area rates for natural gas producers, the Court conclusively demonstrated that ratemaking methodologies perceived to produce just and reasonable results in the past may be scrapped in favor of other methodologies now perceived to be preferable. *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). Therefore, we cannot find that the new method employed constitutes a deregulation of wholesale power rates.

We find no merit to petitioners' remaining arguments. In Order No. 487, which we have said provides a sufficient basis and purpose for the new rule, the Commission made clear that it considered the antitrust implications of the rule. The Commission stated that it preferred to deal with that issue in individual ratemaking proceedings in which it could develop an appropriate evidentiary record. This alternative was approved in *Gulf States Utilities Co. v. FPC,* 411 U.S. 747, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973). Finally, the Commission considered the automatic refund proposal by petitioners. It opposed the proposal as "too inflexible and restrictive" but rath-

er chose to consider refunds on an individualized basis in ratemaking proceedings. We cannot find this reasoning to be arbitrary or capricious.

Based upon the foregoing, the Orders of the Commission be, and the same are, hereby

Affirmed.

BAZELON, Chief Judge (concurring separately):

While I agree with the result reached by the majority, I have two concerns. In discussing the presumptive validity of the questioned Commission rulemaking, the majority invokes the general precept that, "Petitioners bear 'the heavy burden of making a convincing showing that [a rule] is invalid because it is unjust and unreasonable in its consequences.'" Two Supreme Court opinions are offered as the source of the quoted language.[1] While such a burden is required for relief, I do not believe that it may be imposed merely *to raise the question* of a rule's proper application. To apply the more rigorous standard at the threshold is to risk making the presumption of validity a concrete monument to automaticity. In addition, to require of impecunious associations or private citizens a quantum of evidence beyond their financial means to marshal, as prerequisite to

examining the rule or its controlling effect, is to blunt the tools with which bad or outdated rules are discarded or limited. As in this case, compliance with APA informal rulemaking procedures merely raises the presumption of validity, it does not, of itself, render the product of rulemaking unassailable; neither should the financial plight of the challenger, combined with a heavy burden to show invalidity, operate as a practical matter to discourage even raising the question.

Further, the Court states, in affirming the Commission's rejection of petitioners' proposal for automatic refunds:

[The Commission] opposed the proposal as "too inflexible and restrictive" but rather chose to consider refunds on an individualized basis in ratemaking proceedings. We cannot find this reasoning to be arbitrary or capricious.

173 U.S.App.D.C. p. ——, 522 F.2d p. 169. I believe this does not reflect abandonment of the well-recognized principle that the end of public utility regulation is protection of consumers from exorbitant rates beyond the zone of reasonableness within which rates must properly fall. I deem that requirement to apply whether or not the present uncertainty respecting fuel prices, and hence a 'utility's costs, constitutes an emergency.

---

1. 173 U.S.App.D.C. p. ——, 522 F.2d p. 169, quoting *Permian Basin Area Rate Cases*, 390 U. S. 747, 767, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968) which itself quotes from *FPC v. Hope Natural Company*, 320 U.S. 591, 602, 64 S.Ct. 281, 88 L.Ed. 333 (1944).