The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

### IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: December 6, 2024

**NO. S-1-SC-39673**

**EL PASO ELECTRIC COMPANY,**

Appellant,

v.

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

Appellee,

and

**ONWARD ENERGY HOLDINGS, LLC, INTERWEST ENERGY ALLIANCE, and NEW MEXICO OFFICE OF THE ATTORNEY GENERAL,**

Intervenors-Appellees.

**In the Matter of Commission Rulemaking Regarding NMPRC Rule 17.7.3 NMAC Integrated Resource Plans and Procurement Procedures NMPRC Case No. 21-00128-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

El Paso Electric Company
Nancy B. Burns, Deputy General Counsel
Santa Fe, NM

Jones, Snead, Wertheim & Clifford, P.A.
Jerry T. Wertheim
Carol A. Clifford
Santa Fe, NM

for Appellant El Paso Electric Company

Judith Amer, Associate General Counsel
Robert Lundin, Associate General Counsel
Santa Fe, NM

for Appellee

Velarde & Yar
Joseph Yar
Albuquerque, NM

for Intervenor Onward Energy Holdings, LLC

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Joan E. Drake
Susan E. Miller
Albuquerque, NM

for Intervenor Interwest Energy Alliance

Raúl Torrez, Attorney General
Aletheia V.P. Allen, Solicitor General
Keven Gedko, Assistant Attorney General
Santa Fe, NM

for Intervenor New Mexico Office of the Attorney General

**CONSOLIDATED WITH
NO. S-1-SC-39676**

**PUBLIC SERVICE COMPANY OF
NEW MEXICO,**

Appellant,

v.

**NEW MEXICO PUBLIC REGULATION
COMMISSION,**

Appellee,

and

**ONWARD ENERGY HOLDINGS, LLC,
INTERWEST ENERGY ALLIANCE, and
NEW MEXICO OFFICE OF
THE ATTORNEY GENERAL,**

Intervenors-Appellees.

**In the Matter of a Commission
Rulemaking Regarding NMPRC
Rule 17.7.3 NMAC Integrated
Resource Plans and
Procurement Procedures,
NMPRC Case No. 21-00128-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION
COMMISSION**

PNM Resources, Inc.,
Stacey J. Goodwin, Associate General Counsel
Albuquerque, NM

Miller Stratvert, P.A.
Richard L. Alvidrez
Albuquerque, NM

for Appellant Public Service Company of New Mexico

Judith Amer, Associate General Counsel
Robert Lundin, Associate General Counsel
Santa Fe, NM

for Appellee

Velarde & Yar
Joseph Yar
Albuquerque, NM

for Intervenor Onward Energy Holdings, LLC

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Joan E. Drake
Susan E. Miller
Albuquerque, NM

for Intervenor Interwest Energy Alliance

Raúl Torrez, Attorney General
Aletheia V.P. Allen, Solicitor General
Keven Gedko, Assistant Attorney General
Santa Fe, NM

for Intervenor New Mexico Office of the Attorney General

and

**NO. S-1-SC-39677**

**SOUTHWESTERN PUBLIC**
**SERVICE COMPANY,**

       Appellant,

v.

**NEW MEXICO PUBLIC REGULATION**
**COMMISSION,**

       Appellee,

and

**ONWARD ENERGY HOLDINGS, LLC,**
**INTERWEST ENERGY ALLIANCE, and**
**NEW MEXICO OFFICE OF**
**THE ATTORNEY GENERAL,**

       Intervenors-Appellees.

**In the Matter of a Commission**
**Rulemaking Regarding NMPRC**
**Rule 17.7.3 NMAC Integrated**
**Resource Plans and**
**Procurement Procedures,**
**NMPRC Case No. 21-00128-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION**
**COMMISSION**

Hinkle Shanor, LLP
Dana S. Hardy
Timothy B. Rode
Santa Fe, NM

for Appellant Southwestern Public Service Company

Judith Amer, Associate General Counsel
Robert Lundin, Associate General Counsel
Santa Fe, NM

for Appellee

Velarde & Yar
Joseph Yar
Albuquerque, NM

for Intervenor Onward Energy Holding, LLC

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Joan E. Drake
Susan E. Miller
Albuquerque, NM

for Intervenor Interwest Energy Alliance

Raúl Torrez, Attorney General
Aletheia V.P. Allen, Solicitor General
Keven Gedko, Assistant Attorney General

for Intervenor New Mexico Office of the Attorney General

**OPINION**

**THOMSON, Chief Justice.**

{1} In this consolidated appeal, electric utility companies El Paso Electric Company, Public Service Company of New Mexico, and Southwestern Public Service Company (collectively, Appellants), seek judicial review of recently amended regulations (the Amended Rule) governing the integrated resource planning (IRP) framework set out in NMSA 1978, § 62-17-10 (2005) of the Efficient Use of Energy Act (EUEA), NMSA 1978, §§ 62-17-1 to -11 (2005, as amended through 2020). The Amended Rule, codified at 17.7.3 NMAC (4/16/2007 as amended through 11/29/2022), was adopted by the New Mexico Public Regulation Commission (the Commission) following an open and actively litigated rulemaking proceeding in which stakeholders, Appellants included, made full use of the opportunity to make their record and present their positions on the Amended Rule.

{2} On appeal, Appellants pursue a facial challenge to the Amended Rule. They advance dual claims: 1) the Amended Rule as adopted exceeds the scope of the EUEA and 2) the Amended Rule violates Appellants' procedural due process rights. As to Appellants' statutory claim, we conclude that the revised IRP provisions of the Amended Rule pass statutory muster in going "no further than what has been statutorily authorized." *State ex rel. Egolf v. N.M. Pub. Regul. Comm'n*, 2020-

NMSC-018, ¶ 32, 476 P.3d 896. We see no reason to consider the merits of Appellants' second argument regarding procedural due process in view of Appellants' failure to show a protected property interest in avoiding the IRP-related administrative procedures promulgated by the Commission in the Amended Rule. *See Citizens for Fair Rates & the Env't v. N.M. Pub. Regul. Comm'n*, 2022-NMSC-010, ¶¶ 33-34, 503 P.3d 1138 (indicating that "a cognizable property or liberty interest" is an essential element of a procedural due process claim). Because Appellants cannot prevail on either of their two principal points on appeal, we affirm the Commission's decision to adopt the Amended Rule.

## I.  BACKGROUND

### A.  Statutory and Regulatory Background

{3}    Enacted in 2005, the EUEA is part of a constellation of statutes and regulations designed to ensure a safe, reliable, and cost-effective energy supply in New Mexico.[1] The EUEA fosters the use of "all cost-effective energy efficiency and load management programs in their energy resource portfolios" by public utilities and the removal of regulatory disincentives to utility expenditures for those programs "in a manner that balances the public interest, consumers' interests and

---

[1]The EUEA was amended several times through the years on grounds unrelated to this appeal.

investors' interests." Section 62-17-3. To effectuate these goals, the EUEA demands that "public utilities supplying electric or natural gas service to customers . . . periodically file an [IRP] with the [C]ommission." Section 62-17-10. This statutory planning model requires IRPs to

> evaluate renewable energy, energy efficiency, load management, distributed generation and conventional supply-side resources on a consistent and comparable basis and take into consideration risk and uncertainty of fuel supply, price volatility and costs of anticipated environmental regulations in order to identify the most cost-effective portfolio of resources to supply the energy needs of customers.

*Id.*

{4}    To implement the EUEA's planning framework, the Commission promulgated its initial IRP regulations in 2007. *See Integrated Resource Plans for Electric Utilities*, 17.7.3 NMAC (4/16/2007). In relevant part, this initial set of planning regulations required utilities to file a proposed IRP that included a "description of existing electric supply-side and demand-side resources"; an "identification of resource options"; and a "determination of the most cost[-] effective resource portfolio and alternative portfolios." 17.7.3.9(B)(1), (4), (5) NMAC (4/16/2007). This early version of the planning regulations, as is true with the authorizing statute itself, was silent on the issue whether a utility's procurement-related activities are, or can be made, subject to the IRP process.

**B.  Procedural Background and Regulatory Changes Brought About by the Amended Rule**

{5}  In May 2021, the Commission on its own initiative opened the rulemaking proceeding to address possible amendments to the then-existing IRP regulations. In initiating the proceeding, the Commission articulated the need to address three issues. First, the Commission sought to "update" the regulations so as to adhere to and remain consistent with a sequence of recent enactments of, and amendments to, several interrelated New Mexico energy-based statutes.[2] Second, it sought to "ensure that utilities, when proposing resources, prioritize those that best comply with the state's requirements for reducing greenhouse gas emissions, fostering clean energy development, and grid modernization." Third, it sought to address the need to "minimize hastily reviewed last minute regulatory decisions created by current deficiencies in PRC planning and procurement processes."

{6}  The rulemaking proceeding lasted almost a year and a half, resulting in a substantial administrative record. The main focus of the amendments involves what

---

[2]The set of energy statutes referenced by the Commission comprise the Public Utility Act (PUA), NMSA 1978, §§ 62-1-1 to 62-6-28, 62-8-1 to 62-13-16 (1884, as amended through 2021); the Renewable Energy Act (REA), NMSA 1978, §§ 62-16-1 to -10 (2004, as amended through 2021); the Energy Transition Act (ETA), NMSA 1978, §§ 62-18-1 to -23 (2019, as amended through 2023); and the "grid modernization" provisions of Section 62-8-13.

the Commission characterized as the "linkage of [resource] planning and procurement"—traditionally treated as two discrete and sequential processes—into a unified process for planning purposes only. The result was a change in approach that the agency "considered essential to meet the challenges of effecting a clean energy industry and economy in New Mexico, as expressed in the terms, goals and timelines [requirements]" of the EUEA.

{7}     Briefly summarized, the provisions of the Amended Rule require a utility to include three distinct documents in its IRP submission: a statement of need, an action plan, and a request for proposals (RFP), with each form of document bearing on the utility's procurement needs, if any. 17.7.3.10-12 NMAC. Notable for purposes of our analysis and decision is the absence from the Amended Rule of any textual indication that the Commission or any other entity has authority to dictate a utility's IRP choices, be they procurement-related or otherwise. This is perhaps best illustrated by the important, but narrowly tailored role the Amended Rule assigns the newly created independent monitor position: to "advise the [C]ommission and report on the RFP process, but . . . not make or participate in the public utility's decisions regarding the procurement process or the selection of resources." 17.7.3.14(A) NMAC.

{8} The Amended Rule also makes clear that the Commission's *acceptance* of a utility's statement of need and action plan, even when followed by the utility's submission of a proposed RFP solicitation that conforms with those documents, is still subject to "any requirements for [subsequent] applications for *approval* of resource additions set forth in New Mexico law or [C]ommission regulations." 17.7.3.11(C) NMAC (emphasis added); *see also* 17.7.3.12(D) NMAC. In other words, a utility's successful navigation of a given IRP proceeding does not eliminate the utility's need to seek and obtain Commission approval for "resource additions" in a subsequent and separately docketed, *adjudicatory* procurement proceeding.

{9} The Commission in its final order provided valuable insight into the rationale for its policy-driven Amended Rule:

> In past years, the Commission's IRP Rule worked to achieve merely generic results on th[e] intelligible principle . . . [that] comes from the IRP statute: "to identify the most cost-effective portfolio of resources to supply the energy needs of customers." [Section] 62-17-10. . . . IRPs did not reliably plan or predict any actual procurements to come, and utility procurements often occurred behind a veil from the Commission. Now, with the [Amended] Rule, the Commission seeks to achieve specificity and transparency in the pursuit of identifying the most cost-effective portfolios of resources to supply customers. Planning and procurement go hand-in-hand. . . . The [Amended] Rule provides a process to evaluate actual potential generation resources in order to achieve the goals of a public utility's [IRP], legislative directives, and the Commission's Constitutional responsibility.

Continuing this pragmatic theme, the Commission amplified the point as follows:

6

Integrated resource plans must not wither on the vine after their submission, relegated to a mere compliance docket, remaining static. Rather, execution must follow planning, which must be dynamic. Implementation of the [Amended] Rule increases transparency and provides guidance for the execution of a utility's plans. . . . To be sure, the Legislature did not determine that [IRPs] must be filed periodically with the Commission simply for those plans to exist. Rather, the IRP, as a planning tool, is meant to inform the public and Commission so that it may carry out its mandate to ensure just and reasonable [electricity] rates.

{10} In all, the Commission explained in detail the reasoning underlying its joinder of planning and procurement principles in the IRP process, its newly devised use of a neutral independent monitor to "monitor" a utility's procurement process in connection with the IRP, and the remaining entirety of the 2022 rule amendments in a Final Order that covered 129 pages and a Final Order Upon Reconsideration that covered forty-nine pages.

## II. DISCUSSION

## A. Statutory and Regulatory Analysis

## 1. Standard of review and burden of proof

{11} As the parties challenging the Commission's orders, Appellants bear the burden of establishing that the orders are unreasonable or unlawful. NMSA 1978, § 62-11-4 (1965). This is generally interpreted to mean that a party challenging a Commission order "has the burden of showing that the order was 'arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's

7

authority, or otherwise inconsistent with law.'" *Sw. Pub. Serv. Co. v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-012, ¶ 16, 548 P.3d 97 (quoting *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-012, ¶ 12, 444 P.3d 460). But because none of the numerous arguments that Appellants raise in their brief in chief on appeal challenge the Amended Rule as arbitrary and capricious or unsupported by substantial evidence, we have no occasion to apply either of those standards here. *See State v. Hosteen*, 1996-NMCA-084, ¶ 20, 122 N.M. 228, 923 P.2d 595 ("[I]ssues must be adequately argued and supported by authority in the brief-in-chief or they will be deemed abandoned."); *see also Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir. 1995) (collecting New Mexico cases to this effect).

{12}     Although overturning an administrative agency's order in an adjudicative proceeding presents challenges of its own, even more rigorous hurdles await a party who mounts a facial challenge to an agency's rulemaking regulations.[3] *See N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 11, 141 N.M. 41, 150 P.3d 991 (upholding "presumptively valid" agency regulations against a facial challenge where the regulations were "reasonably consistent with the

---

[3]It has not gone unnoticed that similar regulatory appeals often follow a common practice of challenging a rule facially before it can be implemented, thereby encouraging speculative arguments as to how the rule might be brought to life.

authorizing statutes"); *see also Am. Pub. Power Ass'n v. Fed. Power Comm'n*, 522 F.2d 142, 146 (D.C. Cir. 1975) (characterizing the federal counterpart requirement that a litigant "mak[e] a convincing showing that [an agency's rulemaking regulations are] invalid" as a "heavy" burden (internal quotation marks and citation omitted)).

{13} This Court has described the inquiry involved in a facial rulemaking challenge as whether a given rule represents "a permissible exercise of the [agency's] statutory authority," with the onus placed squarely on the challenging party to "establish that no set of circumstances exist[s] where the [regulation under review] could be valid." *Gila Res. Info. Project v. N.M. Water Quality Control Comm'n*, 2018-NMSC-025, ¶ 6, 417 P.3d 369; *accord Sw. Pub. Serv. Co.*, 2024-NMSC-012, ¶ 33 (observing that a party who "brings a facial challenge to [a] rule . . . must establish that the rule is invalid in all of its applications, not merely under some specific set of circumstances" (internal quotation marks and citation omitted)). This all-or-nothing aspect of a facial challenge to the validity of an agency regulation has prompted the United States Supreme Court to conclude that such a challenge is "the most difficult challenge to mount successfully." *Rust v. Sullivan*, 500 U.S. 173, 183 (1991) (internal quotation marks and citation omitted).

9

{14} On another front, courts must tread lightly in reviewing an administrative agency's construction of an "'unclear or ambiguous'" statute where, as here, the issue presented implicates policy choices. *See Gila Res. Info. Project*, 2018-NMSC-025, ¶¶ 34-35 (citation omitted). If the Legislature, "'through express delegation or the introduction of an interpretive gap in the statutory structure, has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited.'" *Id.* ¶ 34 (citation omitted). In such circumstances, we "will confer a heightened degree of deference to . . . special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function, [and] will overturn the administrative construction of statutes by appropriate agencies *only if they are clearly incorrect*." *Id.* ¶ 35 (internal quotation marks and citations omitted). Judicial deference to an agency's construction of an ambiguous statute is particularly fitting if, as is also the case here, "the agency has performed a comprehensive [statutory] construction project that the court could not have undertaken." James T. O'Reilly, *Administrative Rulemaking*, § 18:1 (2023 ed.).

**2. The procurement-related provisions of the Amended Rule do not exceed the scope of the EUEA**

{15} Appellants' main premise is that the procurement-related procedures provided for in the Amended Rule exceed the scope of the IRP framework laid out in the

10

planning provisions of Section 62-17-10 of the EUEA. For reasons that follow, we disagree.

**a.      The planning provisions of Section 62-17-10 are unclear and ambiguous**

{16}    We acknowledge, and the Commission concedes, that several key terms of the planning statute are left undefined in the sparse text of Section 62-17-10—such terms as *cost-effective*, *portfolio of resources*, and the titular phrase *integrated resource planning* itself. To determine whether the statute is ambiguous, we consider these omissions in tandem with a separate factor: the lack of clear legislative direction as to whether, and if so how far into, the electricity procurement process an IRP must delve. Viewed together, these two uncertain factors compel the conclusion that the planning provisions of Section 62-17-10 are indeed ambiguous because they are "susceptible to two or more reasonable meanings." *H-B-S P'ship v. Aircoa Hosp. Servs.*, *Inc.*, 2008-NMCA-013, ¶ 17, 143 N.M. 404, 176 P.3d 1136 (internal quotation marks and citation omitted); *see also Ambiguous*, *Black's Law Dictionary* (12th ed. 2024) (providing that a term is *ambiguous* when "possibly leading to more than one conclusion").

**b.      Given due deference, the Commission's rulemaking was a permissible exercise of the agency's statutory authority**

{17}    Having determined that Section 62-17-10 is ambiguous, we next decide whether the Commission has permissibly construed the statute as authorizing the

11

agency to consider procurement-related matters in a utility's IRP submission. More specifically, "we must resolve whether [this aspect of] the [Amended] Rule's treatment of Section [62-17-10] advances the core purposes of the [statute's planning] provision[s]." *Gila Res. Info. Project*, 2018-NMSC-025, ¶ 36; *see also Rivas v. Bd. of Cosmetologists*, 1984-NMSC-076, ¶ 3, 101 N.M 592, 686 P.2d 934 ("In New Mexico, action taken by a governmental agency must conform to some statutory standard or *intelligible principle*." (emphasis added) (citation omitted)).

{18} Despite the ambiguities inherent in the planning provisions of Section 62-17-10, the Commission properly recognized the intelligible principle of the statute to be the identification of, in the words of the Legislature, "the most cost-effective portfolio of resources to supply the energy needs of customers." Section 62-17-10. To further that principle in a manner that serves the interests of the public and the various stakeholders involved, the Commission implemented a flexible policy approach that featured the melding of two distinct but related concepts—planning and procurement solicitation. This pragmatic policy adjustment resembles more of a logical "evolution" in construction consistent with the purposes of Section 62-17-10, as the Commission describes it, and less of a "radical[ ]" departure in

construction unmoored to the text of the statute, as Appellants would have it.[4] We explain.

{19}     Beyond the highly deferential review standard here at play, our analysis of the parties' competing views is informed by three factors. First and foremost, the contours of the IRP statutory framework necessarily encompass *both* supply-side resources *and* demand-side resources, a point expressly confirmed in the initial regulations implementing Section 62-17-10. *See* 17.7.3.9(B)(1) NMAC (4/16/2007) (requiring an electric utility to set forth in its proposed IRP a "description of existing electric supply-side and demand-side resources"). Indeed, these combined supply-side and demand-side inquiries are the very hallmarks of the IRP process in any iteration. As one commentator has put it, the requirement that "a utility evaluate[ ] its options for meeting its future system needs" on the dual bases of its supply-side and demand-side resources itself constitutes the "feature [that] is the 'integrated'

---

[4]This case is distinguishable from *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, upon which Appellants heavily rely. 1999-NMSC-019, 127 N.M. 272, 980 P.2d 55. While the Commission in this case resolved an ambiguity in the IRP statute resulting from legislative silence, the actions of its predecessor agency, the Public Utility Commission, went much further in *Sandel* in attempting to "carry out broad changes in public policy" on a controversial subject through "sweeping [public policy] pronouncements." *Id.* ¶ 19. As we recently concluded in circumstances analogous to those presented here, *Sandel* is clearly "inapposite" to the type of situation at hand. *See Sw. Pub. Serv. Co.*, 2024-NMSC-012, ¶ 43.

aspect of integrated resource planning." James M. Van Nostrand, *An Energy and Sustainability Roadmap for West Virginia*, 115 W. Va. L. Rev. 879, 886-87 (2013). That being so, it is unclear how or why the Commission's inclusion of a supply-side procurement solicitation inquiry as part of New Mexico's IRP procedures would violate the spirit or ambiguous letter of Section 62-17-10.

{20} Nor does the rationale offered by Appellants on this score withstand scrutiny. It is Appellants' view that the Legislature, through Section 62-17-10, "has spoken plainly about what an IRP is and what the Commission can do [to regulate the IRP process]." But this is hardly the case. To demonstrate why, it is well to reiterate the text of the single sentence devoted in Section 62-17-10 to delineating the substantive contents of a utility's IRP:

> Utility [IRPs] shall evaluate renewable energy, energy efficiency, load management, distributed generation and conventional supply-side resources on a consistent and comparable basis and take into consideration risk and uncertainty of fuel supply, price volatility and costs of anticipated environmental regulations in order to identify the most cost-effective portfolio of resources to supply the energy needs of customers.

Section 67-17-10.

{21} To the extent the quoted statutory language identifies certain supply-side and demand-side resources—including distributed generation and conventional resources on the one hand, and energy efficiency and load management on the

other—the statute and its planning provisions cannot reasonably be viewed as "plain" in meaning, much less as excluding by implication the Commission's consideration of other relevant but unspecified factors, be they procurement-related requirements or otherwise. *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (Thomson/West 2012) (advising that the negative-implication canon—based on the supposition that "[t]he expression of one thing implies the exclusion of others . . . must be applied with great caution, since its application depends so much on context"). Because Section 62-17-10 cannot reasonably be read as a statute that "expresses things through a list," the interpretive assumption "that what is not listed is excluded" simply has no bearing here. *See and compare* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:23 (7th ed. 2012) (noting that *expressio unius est exlusio alterius* stands for the proposition that when a legislature expresses meaning through a list, a court may assume that what is not listed is excluded).

{22}    Significantly, the Legislature in enacting the EUEA in 2005, gave the Commission little or no guidance as to what form or substance the regulations that would govern the IRP process should take. Similar to this Court's approach in parallel circumstances presented in *Gila Resources Information Project*, "[w]e decline to read the Legislature's silence as [implicitly] embracing . . . any particular

15

approach to determining [the intended scope of the IRP process]. Rather, we construe that silence as a broad conferral of authority to the Commission allowing it to pursue the policies and regulatory approaches it deemed most wise." 2018-NMSC-025, ¶ 66 (citations omitted). The Legislature's tacit delegation of authority must be viewed as sufficiently broad to allow, for example, the Commission to have determined that the use of an independent monitor as advisory staff would help the Commission facilitate the submission of utility RFPs that were "fair, competitive, and transparent." 17.7.3.14(A) NMAC; *see* NMSA 1978, § 8-8-13(A) (1998) (recompiled as NMSA 1978, § 62-19-19(A) (effective January 1, 2023)). Appellants have not sufficiently explained why this Court should conclude otherwise in second-guessing such a discretionary—and reasonable—policy decision by the Commission.

{23}     Second, the Commission, acting within its legal authority and technical expertise, was warranted in concluding that the rapidly evolving technologies and legislative landscape in the energy sphere demanded the adoption of a "revamp[ed] and modernize[d]" planning process, one which would allow the agency to take a more "proactive" role by "increas[ing the] level of upfront [agency] involvement" in a utility's "critical energy resource choices." Perhaps most prominent among the statutory developments cited by the Commission were the 2019 amendments to

16

Section 62-16-4 of the Renewable Energy Act that set forth a series of increasing renewable portfolio standard benchmarks culminating in the ambitious yet realistic requirement that public utilities supply one hundred percent of their retail electricity sales from renewable energy by 2045. *See* NMSA 1978, § 62-16-4(A)(1)-(6) (2019). Despite Appellants' contentions to the contrary, we discern no error in the Commission's reliance on this and other closely-related, New Mexico energy statutes as aids in formulating a coherent construction of Section 62-17-10. *See N.M. Att'y Gen. v. N.M. Pub. Regul. Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453 ("'[T]he provisions of a statute must be read together with other statutes in pari materia under the presumption that the [L]egislature acted with full knowledge of relevant statutory and common law.'" (quoting *State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 4, 115 N.M. 573, 855 P.2d 562); *see also United States v. Bass*, 404 U.S. 336, 344 (1971) (recognizing that statutes should be interpreted "with *an eye to the surrounding statutory landscape* and an ear for harmonizing potentially discordant provisions" (emphasis added)). In short, the Commission's reliance on kindred New Mexico energy statutes in reaching its policy decisions here provides no basis to question the efficacy of the Amended Rule.

{24} Third and finally, the Amended Rule adopted by the Commission was not the work of an agency acting beyond the bounds of its delegated authority, as

17

Appellants' briefing impliedly suggests. Quite to the contrary, the Commission's adoption of the Amended Rule marks its joinder with a growing number of counterpart public utility commissions that have taken similar regulatory action to extend IRP procedures to the procurement or "resource activity" realms. *See*, *e.g.*, Opinion and Order, *In the Matter of the Notice of Proposed Rulemaking Regarding Res. Planning*, Ariz. Corp. Comm'n, Docket No. RE-00000A-09-0249, Decision No. 71722, at 1 (June 3, 2010) (amending the resource planning rules of Arizona Administrative Code 14-2-7 by "adding new rules for procurement and independent monitor selection and responsibilities"); Order, *In the Matter of Pub. Util. Comm'n of Or. Investigation into Integrated Res. Planning*, Docket No. UM 1056, Ord. No. 07-002, at 11-12 (Jan. 8, 2007) (requiring an IRP filed by an Oregon public utility to contain "[a]n action plan with resource activities the utility intends to undertake over the next two to four years to acquire the identified resources, . . . with the key attributes of each resource specified as in portfolio testing").

{25}    In concluding this aspect of our analysis, it is well to remember that the task of this Court is not to determine on a clean slate how best to foster efficiency in the planning and procurement processes that are so vital to achieving an environmentally responsible and cost-effective energy supply. That is the domain of the Commission. Through delegation by the Legislature, it was the Commission that

18

was free "to implement the policies it deem[ed] most prudent" in construing the vague and uncertain language of Section 62-17-10, and whose consideration of the issues was "limited only to the extent that its construction of [the statute had to have] serve[d the] provision's core purposes." *Gila Res. Info. Project*, 2018-NMSC-025, ¶ 62. We discharge our own more restrictive duty by deciding whether the Amended Rule was "premised on a permissible construction" of Section 62-17-10, *Gila Res. Info. Project*, 2018-NMSC-025, ¶ 62, and in doing so, answer that question in the affirmative.

**3. The validity of the procurement provisions of the Amended Rule is not called into question by the Commission's prior regulatory practice**

{26} Appellants also miss the mark in arguing that "[t]he Commission's longstanding practice of using the IRP as a utility's 'planning tool' only and not a means of compelling specific resource procurements has fixed its interpretation of the IRP statute." In essence, Appellants ask us to hold that the Commission's prior practice stripped it of authority to amend its own regulations. This we decline to do.

{27} Our analysis of this argument need go no further than to recite and apply the settled rule that an "agency is always free to change its policy, as long as it announces a policy that is within the range permitted by the Legislature, uses a procedure the Legislature has authorized it to use to make binding policy decisions, and explains the reasons for its change in policy." *Gila Res. Info. Project*, 2018-NMSC-025, ¶ 67

19

(brackets omitted) (quoting 1 Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise* § 3.3, at 165 (7th ed. 2024)). Each element of that test was met here. As indicated above, the Amended Rule constitutes a permissible policy choice, the painstaking rulemaking proceedings were open and transparent, and the Commission cogently explained the reasons underlying its change in policy. Thus, the circumstances of this case allow no principled distinction to be drawn "between initial agency action and subsequent agency action undoing or revising that action." *F.C.C. v. Fox Television Stations*, *Inc.*, 556 U.S. 502, 514-15 (2009) (clarifying that although an agency "must show that there are good reasons for" a change in policy, it "need not always provide a more detailed justification [for a change in policy] than what would suffice for a new policy created on a blank slate").

**4. The Amended Rule does not facially violate the multi-jurisdiction utility provisions of Section 62-17-10**

{28}     As a final statutory matter, Appellants take the Commission to task for its rulemaking treatment of the express provision in Section 62-17-10 that the agency "take into account a public utility's resource planning requirements in other states and . . . authorize utilities that operate in multiple states to implement plans that coordinate the applicable state resource planning requirements." Section 62-17-10. Because this argument, too, borders on the frivolous—at least in the present context

20

of Appellants' facial challenge to the Amended Rule—we need not linger in discussing it.

{29}     Significantly, Appellants acknowledge, as they must, that the Commission incorporated verbatim the quoted multi-jurisdiction language of Section 62-17-10 into the Amended Rule. *See* 17.7.3.16(C) NMAC (providing for exemptions in recognition of additional planning needs when implementing multi-state resource planning requirements). Indeed, the Commission saw fit to reference the multi-jurisdiction provision twice in the Amended Rule, on the other occasion capturing the sum and substance of the provision thusly: "A multi-jurisdictional utility shall include in its IRP a description of its resource planning requirements in the other state(s) where it operates, and a description of how it is coordinating the IRP with its out-of-state resource planning requirements." 17.7.3.8(D) NMAC.

{30}     Given the textual emphasis of this topic in the Amended Rule, Appellants' facial challenge to this aspect of the Amended Rule must fail. This is because, as discussed earlier in this opinion, the relevant inquiry is not whether Appellants can show that the challenged regulations "could be applied unlawfully," but instead whether Appellants have shown that there is "no set of circumstances" in which this portion of the Amended Rule could be valid. *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012) (internal quotation marks and citation

21

omitted); *Sw. Pub. Serv. Co.*, 2024-NMSC-012, ¶ 33 (internal quotation marks and citation omitted). A proper determination of that issue must await "an as-applied challenge in which specific facts would be relevant." *Sw. Pub. Serv. Co.*, 2024-NMSC-012, ¶ 33 (internal quotation marks and citation omitted). As the Tenth Circuit Court of Appeals succinctly stated in similar circumstances, Appellants' position is "necessarily speculative until the [Amended R]ule is actually applied." *Pub. Lands Council v. Babbitt*, 167 F.3d 1287, 1302 (10th Cir. 1999).

{31}     Nor, as we discuss next, do Appellants articulate a cognizable constitutional claim in attempting to cast their challenge to the Amended Rule in terms of a deprivation of procedural due process rights.

**B.     Appellants' Constitutional Due Process Concerns**

{32}     As an apparent fallback position, Appellants also raise a facial challenge to the Amended Rule on procedural due process grounds. Appellants question the constitutionality of various aspects of the Amended Rule, including the breadth and scope of the facilitated stakeholder process described in 17.7.3.9 NMAC and the newly created RFP advisory role of an independent monitor. *See* 17.7.3.14 NMAC. But Appellants' due process contentions suffer from a fundamental threshold defect that stands in the way of this Court's review of the issue: the absence of a colorable

showing that Appellants possess a protected property interest in the outcome of a preliminary, non-adjudicative IRP agency decision.

{33} This conclusion is consistent with, if not dictated by, a long line of cases decided by the United States Supreme Court and federal circuit courts. *See*, *e.g.*, *Hannah v. Larche*, 363 U.S. 420, 442 (1960) ("[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."); *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) ("The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights."); *Georator Corp. v. EEOC*, 592 F.2d 765, 768-69 (4th Cir. 1979) (observing that when a "preliminary [agency] determination is without legal effect in and of itself, due process will be satisfied [only] if there is an opportunity to be heard before any final order of the agency becomes effective"); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1086 (10th Cir. 2006) (concluding that a party's negotiated "'right' . . . not to follow through with . . . pending administrative appeals is . . . not the kind of right to which

23

a property interest may attach, regardless of the expense that these proceedings may entail, and regardless of the consequences of a negative outcome").[5]

{34} These same principles plainly cover the now intertwined planning and procurement inquiries that lie at the heart of the expanded IRP process laid out in the Amended Rule, a process that was carefully designed to culminate not in the Commission's *approval* or *adjudication* of the merits of a utility's submitted statement of need or action plan, but in mere Commission *acceptance* of those filings as technically compliant with agency requirements. As previously indicated, the all-important, outcome-determinative *adjudication* of the substance of those filings was purposefully made the subject of another day and another proceeding.

{35} In urging that their due process rights are nonetheless implicated by the Amended Rule, Appellants devote only a single sentence in their brief in chief before this Court to advance their undeveloped assertion that they have a property interest in energy resources they acquire, and the transmission and distribution systems that

---

[5]There is no New Mexico case directly on point. But this Court has recognized the distinction between "an administrative action as regulatory when it furthers the public interest under the state's police powers and adjudicatory when it is based on adjudicating a private right rather than implementing public policy," in holding that "personal notice [to every affected party] was not required" in a rulemaking situation. *See Rayellen Res., Inc. v. N.M. Cultural Props. Rev. Comm.*, 2014-NMSC-006, ¶ 27, 319 P.3d 639 (citing *In re. Timberon Water Co., Inc. v. N.M. Pub. Serv. Comm'n*, 1992-NMSC-047, ¶ 23, 114 N.M. 154, 836 P.2d 73).

are part of their grids. In service of that claim, Appellants cite only a single case authority, this Court's opinion in *Uhden v. N.M. Oil Conservation Comm'n*, 1991-NMSC-089, ¶ 10, 112 N.M. 528, 817 P.2d 721, to support their putative proposition that "administrative proceedings affecting a property or liberty interest must comply with due process." Critical here is the fact that, despite Appellants' broad gloss, the Court majority in *Uhden* took pains to make clear that the appeal therein and the determination under review arose from "an adjudicatory and not a rulemaking proceeding." *Id.* ¶ 7. As a result, *Uhden* does not aid Appellants' litigation stance in the present rulemaking case.

{36} In view of Appellants' failure to establish the existence of a recognized property interest in the outcome of a non-adjudicative, IRP compliance decision on the Commission's part, we end our analysis here without entertaining the merits of Appellants' due process claims. *See Citizens for Fair Rates & the Env't*, 2022-NMSC-010, ¶ 34; *see also James v. Cleveland Sch. Dist.*, 45 F.4th 860, 864, 867 (5th Cir. 2022) (stating that "[t]he first inquiry in every due process challenge . . . is whether the plaintiff has been deprived of a protected interest in property or liberty," and that absent any such interest "there is nothing subject to Due Process protections and our inquiry ends" (internal quotation marks and citations omitted)).

## III. CONCLUSION

{37} Appellants have failed to meet their burden to show that the Commission's orders adopting the Amended Rule were unreasonable or unlawful or that the Commission violated their procedural due process rights. We therefore affirm the Commission's orders.

{38} **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**BRIANA H. ZAMORA, Justice**

26